**J. Raymond CLARK, Plaintiff,**

v.

**SUPERIOR COURT OF the DISTRICT OF COLUMBIA, Defendant.**

Civ. A. No. 88–2272(RCL).

United States District Court, District of Columbia.

Nov. 15, 1988.

Mary Todd Foldes, Gerst, Heffner, Foldes & Podgorsky, Washington, D.C., for plaintiff.

Jocelyn N. Sands, Asst. Corp. Counsel (Frederick D. Cooke, Jr., Corp. Counsel, Martin C. Grossman, Deputy Corp. Counsel, Washington, D.C., William J. Earl, Chief, Major Case Section, Civ. Div., with her on the brief), for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Plaintiff in this action is defendant in a suit by his former spouse, Danielle J. Clark, in the Superior Court of the District of Columbia. The Superior Court action concerns Danielle Clark's contract claim for one-half of the gross proceeds of Raymond Clark's Keogh account, under the terms of their separation agreement.[1] That account was completely paid out in November 1986, and Raymond Clark received the lump-sum amount of $279,637.56 at that time.

Danielle Clark filed suit in Superior Court in December 1986, seeking specific performance and enforcement of the separation agreement as well as damages.

---

1. The paragraph of the separation agreement at issue here reads:

It is agreed that all payments made by Husband under the so-called Keogh Plan (Qualified Retirement Plan) in the past and to be made in the future, are the joint property of the parties. At such time as the Husband elects to receive benefits under this plan, such benefits when received by Husband shall be divided equally between the parties and any such payments shall be considered to be alimony at that time. The foregoing provisions of Paragraph 4 include the shares of Putnam Growth Stock purchased under the Keogh Plan which are registered in the name of wife.

Plaintiff here, Raymond Clark, moved to dismiss the Superior Court action "on the basis that ERISA broadly preempts state law and, subject to exceptions that do not apply here, vests exclusive jurisdiction to hear actions pertaining thereto in the district court." Complaint at 2.

Judge Wertheimer of Superior Court denied the motion to dismiss on the grounds that Danielle Clark's claim sounded essentially in contract.[2] Raymond Clark now asks this court to enjoin the Superior Court from continuing to act on this matter, on the grounds that this court has exclusive jurisdiction, pursuant to the provisions of the Employees Retirement Income Security Act of 1974 (as amended) ("ERISA") 29 U.S.C. §§ 1001, *et seq.*, 29 U.S.C. § 1132.

Raymond Clark's claim relies on two related assertions. He first asserts that Danielle Clark's action "relates to" ERISA within the broad preemptive effect given that phrase in *Shaw v. Delta Airlines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Plaintiff asserts that Danielle Clark's claim, therefore, is void under 29 U.S.C. § 1056(d)(1), which prohibits assignment or alienation of benefits provided under the plan. Second, plaintiff asserts that Danielle Clark failed to obtain a "qualified domestic relations order" under 29 U.S.C. § 1056(d)(3)(G), which is the only exception to the anti-alienation provision. A qualified domestic relations order, according to plaintiff, is a predicate for a cause of action under 29 U.S.C. § 1132(a)(1)(B). That sec-

tion, plaintiff argues, is the only exception to § 1132(e), which vests exclusive jurisdiction over ERISA civil actions in the federal courts.[3]

The Supreme Court, in two recent decisions, has done much to clarify the interrelated preemption and jurisdictional provisions of ERISA. In *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), and in *Franchise Tax Bd. v. Laborer's Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed. 2d 420 (1983), the Court carefully analyzed and distinguished two types of preemption claims. The first occurs when a defendant raises preemption as a federal defense. The second type applies to a situation in which "Congress may so completely preempt a particular area, that any civil complaint raising this. select group of claims is necessarily federal in character." *Taylor*, 107 S.Ct. at 1546.

Addressing the former type, the Court in *Taylor* and *Franchise Tax* affirmed the "long-settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Taylor*, at 1546. "Federal pre-emption," the Court continued, "is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of the complaint, and, therefore, does not authorize removal to federal court." *Id.*[4] In *Franchise Tax*, moreover, the Court held that "ERISA preemption, without more, does not convert a

---

2. Judge Wertheimer found that "this is basically a contract action in which the measure of damages, if any, will be by reference to sums that were withdrawn from a Keogh Plan, or received from a Keogh Plan. But, the obligation that's sought to be enforced does not arise out of any such plan, doesn't depend upon the terms of any such plan, doesn't require interpretation of any such plan. And, nor does anyone on behalf of the plan, even if you knew who that was, have to take any action as a result of whatever may be wrapped in this case." Transcript, at 36–37.

3. 29 U.S.C. § 1132(e), provides as follows:
   (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of

competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.
   Subsection (a)(1)(B) states:
   A civil action may be brought—
      (1) by a participant or beneficiary— ...
      (B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

4. *Taylor* and *Franchise Tax* both involved removal jurisdiction, rather than as here an action to enjoin the state court, undertaken in aid of federal jurisdiction. The ultimate issue, however, whether jurisdiction is proper in this court, is the same.

state claim into an action arising under federal law." *Id.*

Danielle Clark's Superior Court complaint states a claim for specific performance of the separation agreement and for damages. The Superior Court found this claim to state only a contract claim under state law, and this court does not disagree. Raymond Clark's defense that the anti-alienation provision of ERISA preempts her claim, and that the contract is therefore void, is not enough to vest jurisdiction in this court. Under *Taylor* and *Franchise Tax,* a federal defense alone, regardless of its merits, does not serve to vest jurisdiction in this court.

The question is thus whether Danielle Clark's cause of action is itself preempted by ERISA, that is, whether it is within the "select group of claims" that "is necessarily federal in character." *Taylor,* at 1546. This latter type of preemption arises from the principle of *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), which found that the

> preemptive force of § 301 [of the Labor Management Relations Act] is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

*Franchise Tax,* 463 U.S. at 23, 103 S.Ct. at 2853.

*Franchise Tax* and *Taylor* make clear, however, that preemption under the *Avco* doctrine is much more limited than under § 301 of the Labor Management Relations Act. *Franchise Tax* involved the question of whether a state could enforce tax laws by levying funds held in trust under an ERISA-covered plan. The court held that, for preemption to occur, the state law rights asserted must be of "central concern" to the ERISA statute. Additionally, however, the Court required that the federal statute must provide a cause of action

which supplants that created by state law. As the Court explained in that case:

> The phrasing of § 502(a) [29 U.S.C. § 1132] is instructive. Section 502(a) specifies which persons—participants, beneficiaries, fiduciaries, or the Secretary of Labor—may bring actions for particular kinds of relief. It neither creates nor expressly denies any cause of action in favor of state governments, to enforce tax levies or for any other purpose. It does not purport to reach every question relating to plans covered by ERISA.

*Franchise Tax* at 25, 103 S.Ct. at 2854. In holding that the federal court had no jurisdiction, the Court in *Franchise Tax* found both that the State's right to enforce its tax levies was not of central concern to ERISA, and that the statute created no preemptive cause of action in favor of the state government.

In *Taylor,* on the other hand, the plaintiff sued the insurer-underwriter of an ERISA-covered plan for reimplementation of ERISA benefits and for related contract and tort claims. The Court found this claim—a suit by a participant or beneficiary to enforce the terms of the plan, to be clearly within the terms of 29 U.S.C. § 1132(a)(1)(B), set forth at note 3 above. After reviewing the legislative history of that section, the Court concluded · that it "consistently sets out this clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction ..." *Taylor,* 107 S.Ct. at 1547. Section 502(a)(1)(B) provides for concurrent jurisdiction, and thus the action could be properly removed to federal court.

The exclusive jurisdiction granted federal courts in 29 U.S.C. § 1132(e) is clearly not plenary, then, with respect to all ERISA related claims, but rather extends only to those causes of action specifically set forth in the subchapter. Assuming that Danielle Clark is a beneficiary under the plan,[5] the sole possible cause of action

---

5. 29 U.S.C. § 1002(8) defines "beneficiary" as a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."

afforded her by the subchapter is provided under 29 U.S.C. § 1132(a)(3)(B).[6] Under that section, a civil action may be brought

(3) by a participant, beneficiary, or fiduciary (a) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ...

At least a part of Danielle Clark's claim is no doubt for "appropriate equitable relief", *i.e.*, for specific enforcement of the terms of the separation agreement. The claim, however, is clearly not related to enforcement of ERISA or of the terms of Raymond Clark's plan.[7] Because the court finds no cause of action created in favor of a "beneficiary" in Danielle Clark's position, her cause of action is not preempted under the *Avco* doctrine and *Franchise Tax.*

One point raised by plaintiff is troubling under this analysis, however. Plaintiff argues that, in 1984 amendments to ERISA, Congress specifically carved out an area of concurrent state court jurisdiction in the area of domestic relations. The amendment creates an exception to the anti-alienation and assignment provision of ERISA specifically for a "qualified domestic order"

as defined in 29 U.S.C. § 1056(d)(3)(B), (C) and (D). The provision now reads:

(3)(A) Paragraph (1) [the alienation prohibition] shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order.

29 U.S.C. 1056(d)(3)(A).

The parties agree that Danielle Clark has not obtained such an order. Plaintiff argues that the amendment creates a "special remedy," which represents Danielle Clark's sole recourse under the Act. In order to be successful here, however, this argument must show that Congress intended to create a cause of action pursuant to a qualified domestic relations order for which jurisdiction is exclusive in the federal courts. Although plaintiff presents an argument for his preemption defense, the court is unconvinced that such preemption, were the court to find it, creates a separate cause of action. The court finds a cause of action under such an order was intended to be provided by § 1132(a)(1)(B), for which jurisdiction is concurrent in state and federal courts.

Although in the Superior Court action both parties agreed that Danielle Clark is a "beneficiary" under the Act, the court does not decide this to be true as a matter of law. If she is determined to be neither a beneficiary or a participant, she would lack standing to sue under 29 U.S.C. § 1132. *See Herman Hosp. v. MEBA Medical & Benefits Plan,* 845 F.2d 1286 (5th Cir.1988); *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2d Cir.1983), *cert. dismissed,* 463 U.S. 1233, 104 S.Ct. 26, 77 L.Ed.2d 1449 (1983) and *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).

6. In the Superior Court action, both parties agreed that Danielle Clark's action did not involve a plan, and thus did not come under the terms of § 1132(a)(1)(B). At any rate, that section provides for concurrent jurisdiction and thus, were her action under that section, an injunction would clearly be improper.

7. In fact, just the opposite is true. Danielle Clark is seeking to avoid the enforcement of ERISA's anti-assignment and alienation provisions, which constitute Raymond Clark's preemption defense. To the extent plaintiff argues

that it is he who is seeking equitable relief under this section—*i.e.,* an injunction prohibiting the Superior Court from violating the anti-assignment and alienation provisions, the court has two responses. First, and primarily, such a suit is premature, as the Superior Court has not yet sought to enforce the separation agreement. The Superior Court, albeit with much discussion of ERISA preemption, has ruled only on the jurisdictional issue, and plaintiff still has every opportunity to raise his specific preemption defenses on the merits. Second, it appears to the court that Raymond Clark is no longer a "participant" as defined by 29 U.S.C. § 1002(7). Because he has received his benefits in a lump-sum, he no longer "is or may become entitled to a benefit." *See Kuntz v. Reese* 785 F.2d 1410, 1411 (9th Cir.1986) *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986); *Joseph v. New Orleans Elec. Pension,* 754 F.2d 628, 630 (5th Cir.1985), *reh'g denied* 761 F.2d 695, (5th Cir.1985) (*en banc*), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985); *Saladino v. I.L.G.W.U. Nat'l. Retirement Fund,* 754 F.2d 473, 476 (2d Cir.1985).

The ERISA amendments, in relevant part, were a response to a number of cases, primarily in community property states, which found that the anti-alienation provision of ERISA was not intended to preempt state domestic relations law permitting the assignment of benefits for support obligations. The reasoning thus followed: "if ERISA permits the transfer of an employee's pension benefit rights to his ex-spouse pursuant to state community property law, then it impliedly authorizes an ex-spouse to enforce these rights against the pension plan in federal court." *Stone v. Stone,* 632 F.2d 740 (9th Cir.1980), *cert. denied, Seafarers International Union v. Stone,* 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981). This conclusion found support in the Supreme Court's dismissal of *In re Marriage of Campa,* for want of a federal question, 89 Cal.App.3d 113, 152 Cal.Rptr. 362 (1979) appeal dismissed, *Carpenter's Pension Trust Fund v. Campa,* 444 U.S. 1028, 100 S.Ct. 696, 62 L.Ed.2d 664 (1980). The Ninth Circuit concluded in *Stone* that in so dismissing *Campa,* the Supreme Court "necessarily determined that ERISA, including section 502(a)(1)(B), does not foreclose suits in state courts against ERISA-regulated pension plans by spouses seeking to enforce community property interests." *Stone* at 743. The court therefore concluded that such ex-spouses were "participants" under 502(a)(1)(B) and that jurisdiction over their claims was concurrent in state and federal courts. *Id.*

The 1984 amendments thus sought to expand ERISA preemption to suits seeking to enforce domestic relations orders. The amendments, however, do not change the cause of action by which holders of domestic relations orders, qualified or otherwise, may seek to enforce those orders. The holder of the qualified order becomes a participant or beneficiary who seeks to recover benefits due under the plan. Such enforcement actions remain under § 502(a)(1)(B), and are thus properly brought in state court. It is for that court, unless the action is properly removed, to determine whether Danielle Clark is such a beneficiary, and, if so, whether her claim is preempted and thus void for failure to ob-

tain the qualified order before the termination of the plan in 1986.

For the above-stated reasons, the court finds that jurisdiction is not exclusive, and is at most concurrent in this court. For reasons of comity, this court declines to exercise concurrent jurisdiction and finds that an injunction against Superior Court would be improper where jurisdiction is also proper in that court. Accordingly, the Court will enter an order granting the motion to dismiss. The motion for a preliminary injunction will be denied as moot.

SO ORDERED.